**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**MELVIN TILLIS ET AL.,**                                                    **PLAINTIFFS**

**V.**                                                   **CIVIL NO. 3:16-CV-287-HTW-LRA**

**SOUTHERN FLOOR COVERING, INC., ET AL**                  **DEFENDANTS**


<u>**OPINION AND ORDER**</u>

BEFORE THIS COURT is Plaintiffs' Motion for Partial Summary Judgment **[doc. no. 53].** Defendants oppose this motion. Having considered the pleadings, the attachments thereto, the relevant authorities, as well as oral arguments presented by the parties, the Court finds the motion is well taken and should be granted.

I.    **FACTS AND PROCEDURAL HISTORY**

This is a wage-and-hour case brought under the Fair Labor Standards Act.[1] The Plaintiffs herein are Melvin Tillis , Nicholas Boykin, Teona Rockingham, Aaron Williams, Marcellus Grant, Jason Weaver and Chase McKnight.  Carpet and flooring installers, these plaintiffs bring this civil lawsuit seeking alleged unpaid overtime compensation against their former employers, namely Southern Floor Covering, Inc., Steven Keith and Jeff Matthews, who are in the carpet and flooring installation business.

---

[1]   The Fair Labor Standards Act (FLSA) is codified at 29 U.S.C. § 201 et seq.  It's stated purpose is to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers" 29 U.S.C. § 202(a). Among other provisions it sets minimum wages and maximum hours of work for covered employees. § 206, §207.

Defendant Southern Floor Covering, Inc., is partially owned by Defendant Jeff Mathews, who is also the President.  The other owners are Carolyn Presley and Angel Mathews.  [doc. No. 54].  Jeff Matthews is responsible for the company's operations, including billing, business decisions, employee compensation decisions, and assigning work tasks to employees. *Mathews Dep.* [doc. no. 53-2 at 11:23-12:12; 19:1-20:22; 73:22-74:4]. As admitted in its Amended Answer [doc. No. 36 ¶ 13] Southern Floor Covering earns over $500,000 per year in gross receipts, the threshold amount for defining an enterprise engaged in commerce under the FLSA.[2]

Plaintiffs filed their Amended Complaint  [doc. no. 35] on February 19, 2017.  Plaintiffs claim that in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. Seq,* Defendants failed to compensate them at the required rate for overtime under 29 U.S.C. § 207(a)(1)[3] when they worked more than forty hours in a week. Plaintiffs also contend that the Defendants failed to maintain adequate

---

[2] 29 U.S.C. § 203 (s)(1)(A)(ii) provides:

"Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that —

(A)(1)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

[3] Section 207(a)(1) provides:

**(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions**

**(1)** Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

work records as required by 29 C.F.R. Part 516,[4] and that the Defendants did not act in good faith in committing these violations, a circumstance which exposes them to the penalties of 29 U.S.C. § 216 (b). That section provides that for violation of the overtime provisions of §207 of the FLSA, the employer shall be liable to the employees affected in the amount of their unpaid overtime compensation and in an additional equal amount as liquidated damages. Section 216(b) also allows for a reasonable attorney's fee and costs of the action to be awarded to successful plaintiffs.

Plaintiff Teona Rockingham also alleges that Defendants retaliated against him in contravention of the provisions of 29 U.S.C. §215(a)(3)[5] and *Hagan v. Echostar Satellite, LLC,* 529 F.3d 617, 625-27 (5th Cir. 2008). Rockingham contends that the Defendants terminated him, or otherwise refused to assign

---

[4] 29 CFR §516.2 provides in pertinent part:

(a) Items required.  Every employer shall maintain and preserve payroll or other records containing the following information and data with respect to each employee to whom section 6 or both sections 6 and 7(a) of the Act apply:

. . .

(6)(i) Regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the Act, (ii) explain basis of pay by indicating the monetary amount paid on a per hour, per day, per week, per piece, commission on sales, or other basis, and (iii) the amount and nature of each payment which, pursuant to section 7(e) of the Act, is excluded from the "regular rate" (these records may be in the form of vouchers or other payment data), (7) Hours worked each workday and total hours worked each workweek (for purposes of this section, a "workday" is any fixed period of 24 consecutive hours and a "workweek" is any fixed and regularly recurring period of 7 consecutive workdays). . . .

[5] 29 U.S.C. §215(a)(3)  provides that it shall be unlawful for any person –

**(3)** to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee;

work to him, because of his complaints about these alleged violations.    This retaliation claim, however, is not a part of this motion for partial summary judgment, but is reserved for the decision of the trier of fact.

## A.  A TYPICAL WORK DAY

Plaintiffs' workday begins when they arrive at the warehouse in Pearl, Mississippi. "When installers arrive for work in the morning they are given a service order that tells them where to go that day to perform their job." [53-6, Mot. for Partial S. J., Exh. 6, Interrogatory Answer #3.] They then load the work vans, and drive to the first worksite. After completing the assigned work, they call back to the office to ask whether more jobs need to be done that day.  If so, they would travel to that job site.  If no additional jobs are scheduled, they would drive back to the warehouse and unload all the scrap and other waste material out of the vans,  Once the work day ends, they would go  home.   [53-2, Mot. for Partial S. J., Exh. 2, Def. Dep. at 48]. Sometimes the work was local, and sometimes the jobs were out of state.  [53-2, Mot. for Partial S. J., Exh. 2, Def. Dep. at 74-75].

## B.  BACKGROUND HISTORY

Defendants hired their first employee around 1994. [53-2, Mot. for Partial S. J., Exh. 2, Def. Dep. 9:20 – 10:3].  From that date until around 2004, Defendants treated these employees as "independent contractors."  [53-2, Mot. for Partial S. J., Exh. 2, Def. Dep. 12-14].  The year 2004 brought an unsettling development.  The Mississippi Unemployment Commission held that Defendants had  misclassified these employees as independent contractors.  [53-2, Mot. for Partial S. J., Exh. 2, Def. Dep. 13:5-24].  Since 2004, Defendants have had to recognize the carpet installers and helpers as "employees."  Commensurate with

4

this new designation, Defendants had to pay them a "salary."  [53-2, Mot. for Partial S. J., Exh. 2, Def. Dep. 19:1-3].

Another dilemma later plagued the Defendants, erupting relative to Defendants' handling of company records concerning hours worked and overtime paid.  Defendant Mathews testified that he believed he did not have to track hours and pay overtime for his flooring installation employees.  The alleged source of his mistaken belief, he says, was based on a conversation with his accountant, Aaron Johnson.[6]  The accountant allegedly had had told him that "a supervising crew leader making a salary of $455 a week did not have to be paid an additional amount for overtime." [59-2, Opp. to Mot. for Partial S. J., Exh 2.] Defendant Mathews, however, testified that he thought this advice was more expansive; he testified in his deposition that he understood the accountant to be saying that *any* employee could be exempt so long as "the company paid a salary of at least $455 a week," [59-1, Op. to Mot. for Partial S. J., Exh 1], and that "you don't have to keep up with their time." [53-2, Mot. for Partial S. J., Exh. 2, Def. Dep. 19:12-20:14, 59:7-12].

The FLSA  generally requires employers to pay nonexempt employees overtime pay at one and one-half times their regular rate for all hours worked in excess of 40 per week. 29 U.S.C. §207(a)(1).   Congress however, has permitted some exceptions, such as the exemption for certain commissioned retail employees, as found in 29 U.S.C. § 207(i).

---

[6] Defendants were aware of the FLSA's overtime requirements for hourly employees, as their hourly forklift operators were paid overtime. [53-2, Mot. for Partial S. J., Exh. 2, Def. Dep. 22:21-25; *see also id.* at 15].

Initially, when faced with the accusations herein, defendants relied upon an exception provided for employers for exempt salaried employees.  Defendants have abandoned that "exempt salaried employee" defense.   At present, they look to the "commission" exemption to overtime under §207(i).  That section provides that an employee who is an employee of "a retail or service establishment," may be exempt from overtime pay if:  (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly wage, *and* more than half of his compensation in a month is from commissions on goods or services.  29 U.S.C. § 207(i).  The Section 207(i) exemption "was enacted to relieve an employer from the obligation of paying overtime compensation to certain employees of a retail or service establishment paid wholly or in greater part on the basis of commissions." 29 C.F.R. § 779.414.

While the Defendants herein contend that these plaintiffs were paid based on a commission rate, they made no notation on the payroll records that the company was treating the employees as exempt commission employees. [53-9, 53-2, Mot. for Partial S. J., Exh. 9 at 1-4; Exh. 2, Def. Dep. 60:6-22; *see also id.* at 21, 22, 23.] Nor did Defendants guarantee employees that they would receive at least the statutory rate under the commission exemption of $10.88 per hour (one and one-half times the minimum wage of $7.25.  [53-2, Mot. for Partial S. J., Exh. 2, Def. Dep. 38:7-18].

With the exception of the forklift operators - who received overtime pay - Defendants did not "ever track hours . . . for any employee," and Defendant Mathews testified that "I was not keeping up with time."  [53-2, Mot. for Partial S. J., Exh. 2, Def. Dep. 15:5-12; 59:7-20].

In an affidavit by Defendant Mathews, he states that the "salary" he paid Plaintiffs was actually "a guarantee of $480 a week or a commission, whichever [i]s greater." [doc. 59-1]. He attests that the "commission" is a fixed percentage of the labor charge paid by the customer. He further states that the guarantee "is for a 5-day work week. The guarantee is reduced by $96 for each day that an employee does not work during the week." Attached to Mathew's affidavit is a spreadsheet entitled "Summary of Plaintiff's Payroll Records," which purports to list the commission and guaranteed base for each employee in each week. The Summary does not provide an explanation of how the commission figures were derived, however. This is especially confusing since the figures listed on the Summary do not comport with the figures listed on the payroll records provided by the Defendants.

One such example occurred for the week of October 2, 2015. Defendants' "Summary" shows that Plaintiff Boykin worked five days the week ending October 2, 2015 [doc. no. 59-1 at p. 3], and would therefore have had a guaranteed base of $480. Since Boykin's commission only totaled $151.34 for that week [doc. 53-9 at p. 6], he should have been paid the base amount of $480, according to the policy stated by Mathews in his affidavit; yet Boykin was paid $500 for that week.

For the week of October 22, 2015, Defendants' Summary shows Plaintiff Boykin with a "base" of $384 for working four days and a commission of $448.13 [doc. no. 53-9 at p. 8]. There are two problems here. First, those same payroll records provided by the Defendants show that Boykin actually worked five days that week, not four; so he should have had a guaranteed base of $480. Secondly,

7

Boykin's pay for that week was neither the $384 base for four days, nor the $480 base for five days, nor the $448.13 in ostensible commission; instead, Boykin was paid $460 for that week, for which no explanation is readily discernible.    The company's records reveal that the employees' pay fluctuated, seemingly at random, from week to week.

On April 19, 2016, Plaintiffs filed the present lawsuit, alleging violations of the overtime provisions of the Fair Labor Standards Act. They alleged that they had worked more than 40 hours per week in a number of weeks, and that they had not been paid overtime.  Defendants have admitted[7] that Plaintiffs worked more than 40 hours in some weeks - though the exact time worked and the number of such weeks is contested - and that they have not paid overtime rates for such time.

In addition, in response to this lawsuit, Defendants have now abandoned their theory that these employees were exempt under the "salary" exemptions to the FLSA, and in this litigation have argued instead that the employees are "commission" employees exempt from overtime under Section 7(i) of the Act. [59, Opp. to Mot. for Partial S. J.]  Section 7 (i), remember, provides that "commissioned" retail employees are exempt from overtime pay if the following conditions are met: (1) the regular pay of such employee is in excess of one and one-half times the minimum wage; and (2)  more than half of the employee's compensation represents commissions on goods or services.

---

[7]   Defendants provided estimates of the hours they contend Plaintiffs worked for certain weeks, based on Defendants' estimates of time required to do particular jobs. See [doc. no. 53-8]. These estimates included: one week with hours worked above forty for Tillis; three weeks with hours worked exceeding forty for Rockingham, including one week where Defendants estimated 59 hours worked; and four weeks with hours worked above forty for Boykin.

Following discovery, on August 31, 2017, Plaintiffs filed a Motion for Partial Summary Judgment accompanied by nine exhibits reflecting work records, pay records and deposition testimony [doc. no. 53].  On October 3, 2017, Defendants filed a six-page Memorandum Brief in opposition to Plaintiffs' motion, and did not address the attached work and pay records.  In support of their Response in Opposition, Defendants provided only two affidavits, one of which included the previously-mentioned, "Summary of Plaintiffs' Payroll records"  [doc. no. 59-1].

## II.   SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." FED. R. CIV. P. 56(a). The United States Supreme Court has held that this rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a

genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once this showing is met, the burden falls on the non-movant to "set forth specific facts showing that there is a genuine issue for trial." *U.S. v. Lawrence*, 276 F. 3d 193, 197 (5th Cir. 2001). While the Court views the evidence in a light most favorable to the non-movant, *see Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir.1997), in order to avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the defendant makes no response to an issue in a summary judgment motion, the district court must look at the summary judgment evidence to determine whether judgment is appropriate. *See John v. State of La. (Bd. of Trs. for State Colls., & Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985) (summary judgment cannot be supported solely on the ground that the non-movant failed to respond to the motion).

## III.    DISCUSSION

**A**.    Plaintiffs' motion seeks partial summary judgment as to seven specific matters. As was evident from the opposition - and as further clarified at oral argument - five of the claims and/or defenses on which Plaintiffs sought summary judgment were unopposed, specifically:

> (1) Plaintiffs are employees under the FLSA, and both Defendant Southern Floor Covering and Defendant Jeff Mathews are employers under the FLSA, and therefore jointly and severally liable.

> (2) Defendants violated the FLSA's regulations requiring them to keep records and track time worked.

(3) Under the FLSA, travel time and wait time is part of working time, which is compensable.

(4) Plaintiffs worked more than 40 hours in some weeks.

(5) Defendants lack any defense under 29 U.S.C. § 259, regarding reliance on administrative rulings.

Defendants, however, have waged an attack on two of the seven points raised by Plaintiffs:

(6) Defendants claim that, as an affirmative defense, they can prove that the Plaintiffs were exempt under Section 7(i) of the Act as "commission" employees; and

(7) Defendants claim that, as an affirmative defense, they can avoid liquidated damages because they had a good faith reasonable basis for thinking they were complying with the law.

Because the failure of the Defendants  specifically to oppose summary judgment is not, by itself,  sufficient for granting the motion, *see John*, 757 F.2d at 709, the Court will begin by discussing each of the unopposed points to determine whether summary judgment on each is supported by evidence in the record. The Court will then turn to the two points which Defendants specifically opposed in the briefing.

1. **The Plaintiffs are employees, and both Southern Floor Covering and Jeff Mathews are employers under the Act, and therefore jointly and severally liable for any violations.**

Under the Fair Labor Standards Act, Plaintiffs must be "employees" in order to be covered. *See Reich v. Circle C. Investments, Inc.*, 998 F. 2d 324, 327

(5th Cir. 1993). In addition, the employer must be "covered" by the Act, *e.g.*, because it is "an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii). Finally, under the FLSA, corporate officers are jointly and severally liable as individuals if they have "operational control" of the corporation, *Donovan v. Grim Hotel Co.*, 747 F. 2d 966, 972 (5th Cir. 1984); *accord Hernandez v. Larry Miller Roofing, Inc.* No. 15-10287 (5th Cir., filed Jan. 5, 2016, rev'd Jan. 6, 2016) ("As recognized by the United States Supreme Court, this definition is expansive and covers any employer, including a corporate officer, with 'managerial responsibilities' and 'substantial control of the terms and conditions of the [employer's] work.'").

Here, Defendants' Answer admits sufficient facts to establish each of these three points. [36 at ¶¶ 4, 8, 13] Defendants specifically admit that Plaintiffs are employees, that Defendants have earned over $500,000 in gross revenue, and that Defendant Jeff Mathews has operational control and determines the terms and conditions of the work such that he may be individually liable. The Defendants did not oppose judgment on these points because there was no basis in the record for any such opposition, and judgment shall be granted.

## 2. Defendants violated regulations requiring them to track hours worked and, therefore, have the burden of proving the hours worked.

"[I]t is the employer who has the duty under § 11 (c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed." *Anderson v. Mt. Clemens*

*Pottery Co.*, 328 U.S. 680, 687-88 (1946); *see McCann v. WC Pitts Const. Co., Inc.*, No. 3:10-CV-52-DPJ-FKB (S.D. Miss. 2011, Sept. 7, 2011). *See also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016).

The *Mt. Clemens Pottery* doctrine creates a burden- shifting framework. The first question this court must ask is whether the "employer has failed to maintain the payroll records required by the Act." *Beliz v. WH McLeod & Sons Packing Co.*, 765 F. 2d 1317, 1330 (5th Cir. 1985). If the employer has not kept the obligatory payroll records, then "the employees' initial burden is to make out a prima facie case that the Act has been violated and to produce some evidence to show the amount and extent of the violation." *Id.* This burden is light, and can rely on loose estimates or a "just and reasonable inference." *Id.* (quoting *Mt. Clemens*). At that point, "the burden then shifts to the employer" to prove that the employee is incorrect, and that no overtime was worked. *Id.*

Here, there is no genuine dispute that Defendants have failed to keep the required records under 29 C.F.R. Part 516. Specifically, Section 516.2(a)(7) requires that, for employees covered by the overtime provisions of the FLSA, the employer must keep a record of the "[h]ours worked each workday and total hours worked each workweek." At deposition, Defendants admitted that they had not complied with their recordkeeping requirements, and utterly had failed to keep any record of the hours worked. Defendant Mathews admitted that he did not "ever track hours . . . for any employee," and that "I was not keeping up with time." Defendants' Deposition at p. 15 ll. 5-12; p.59, ll. 7-20.

Plaintiffs have submitted affidavits and deposition testimony providing estimates of the hours worked. This is sufficient as a matter of law to meet their

prima facie case and to shift the burden to the Defendants to prove hours actually worked.  This court, then, is persuaded that Plaintiffs are entitled to summary judgment on the issue of Defendants' failure to keep the required records of hours worked, thereby shifting the burden to Defendants to prove the actual hours worked by these Plaintiffs.

### 3.  Travel time and wait time constitute working time which must be paid.

The Department of Labor [hereafter "DOL"] regulations specifically define "travel that is all in the day's work" as part of the work day. Particularly significant for our purposes in this case, the regulations state: "Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice." 29 C.F.R. § 785.38.

In this case, Plaintiffs were required to report to the Pearl warehouse at the beginning and end of each work day, where they received instructions, picked up and carried tools and supplies, and otherwise took steps "integral and indispensable" to the day's work. *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005). For this reason, this court finds that the workday began and ended at Pearl, and travel from the warehouse to any job site and back to the warehouse was all in a day's work. In addition, time spent on the jobsite waiting - i.e., for the apartment to be cleared out or for floor planking glue to dry – was also part of the compensable workday. As the regulations state: "For example, a repair man is working while he waits for his employer's customer to get the premises in

readiness." 29 C.F.R. § 785.15. Here, the time Plaintiffs spent waiting was clearly integral to the work and for the benefit of the employer.

This court then appropriately enters judgment in favor of the Plaintiffs on this point, finding that travel time and waiting time are part of the compensable work day in this case.

### 4.  Plaintiffs worked more than 40 hours some weeks.

Employers generally must pay employees "at a rate not less than one and one-half times the regular rate at which he is employed" for any work "longer than forty hours" in a "workweek." 29 U.S.C. § 207. Here, Defendants admit that they  did not pay Plaintiffs at "one and one-half times the regular rate" when the Plaintiff's worked more than 40 hours in a workweek.

The exact number of hours worked, is genuinely disputed between the parties; however, there is no genuine dispute that Plaintiffs worked more than 40 hours in at least some weeks.  The Defendants' 30(b)(6) representative, Jeff Matthews, admitted in deposition that he prepared estimates of the time likely taken to perform the work – estimates which excluded travel time and a great deal of other compensable time – but which still showed the three originally named Plaintiffs in this matter working over 40 hours in several weeks.  [doc. no. 53-8].  This court then appropriately enters summary judgment on this point, finding that Plaintiffs worked more than 40 hours in at least those weeks.

### 5.  Defendants lack any defense under 29 U.S.C. § 259.

The FLSA requires that employers pay minimum wages and overtime compensation under the Act and the employer shall be subject to liability or punishment for failure to do so.  If, however, an employer "pleads and proves that

15

the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or policy of [the FLSA or DOL],. . . [s]uch a defense, if established, shall be a bar to the action or proceeding . . ."  Title 29 U.S.C. § 259.  In the case *sub judice*, Defendants filed an Answer to the Amended Complaint that attempts to assert the affirmative defense of good faith.  Defendants state the following in their Answer.

> 61. The plaintiffs' claims are barred under 29 U.S.C. § 259 because the defendants relied in good faith on the regulations of the Department of Labor.
>
> 62. The plaintiffs' claims for liquidated damages are barred under 29 U.S.C. § 260 because the defendants believed in good faith that they were complying with the FLSA. The defendants sought out professional assistance to review their compensation system and relied on that professional assistance in good faith to believe that they were complying with the law.

*Answer* [doc. No. 36 p.4]

Neither Defendants' Answer nor Defendants' Response in Opposition to Plaintiff's Motion for Partial summary judgment identifies any regulation, opinion or ruling upon which they relied in developing and utilizing the pay scheme that they used and by which Plaintiffs were payed.  *Memorandum Brief.* [doc. No. 59].  Defendants now claim to rely on Section 7(i) of the FLSA. Title 29 U.S.C. § 207(i).[8]

---

[8] Title 29 U.S.C. § 207 (i) provides:

 **(i) Employment by retail or service establishment**

  No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents

This provision, commonly referred to as 7(i), provides for an exception to overtime pay for certain persons employed by retail and service establishments who are paid on a commission basis.  First, at the hearing on this matter, Defendants acknowledged that this theory -- that Plaintiffs were "commissioned" employees -- only developed *after* Plaintiffs filed this lawsuit.  Therefore, Defendants cannot claim this as a good faith defense to the pay scheme that they were using to deprive Plaintiffs of overtime pay prior to commencement of this litigation.  Secondly, Plaintiffs clearly did not meet the requirements for "commissioned" employees delineated in Section 7(i). That provision requires that more than half of the employee's compensation must represent commissions on goods or services.  To the extent it could be determined, Plaintiffs' compensation, here, did not consist of more than half commission.

Defendants also claim to have relied upon the advice of their accountant that they were not required to pay overtime to employees that were "salaried" employees.  Defendants, however, do not identify the law, regulation or opinion upon which they rely; so, they cannot fit under the good faith exception of 29 U.S.C. § 259.

Here, where Defendants have ignored the regulations' requirement to track hours, have supposed all "salaried" employees to be automatically exempt, and have expressed opinions about compensable time that directly contradict the

---

commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

DOL regulations, Defendants have not offered any factual basis supporting their claim that they acted in conformity with DOL regulations or interpretations.

Since Defendants have not identified any regulation or interpretation upon which they supposedly relied in creating their work scheme, this court is persuaded that summary judgment is appropriate in favor of Plaintiffs on this affirmative defense.

### 6. Defendants cannot prove that Plaintiffs are exempt under Section 7(i) of the Act as "commission" employees;

The FLSA sets minimum wages and maximum hours of work. 29 U.S.C. §§ 206, 207. Covered employers must pay covered employees according to these rules, including paying "at a rate not less than one and one-half times the regular rate at which [the employee] is employed" for any work "longer than forty hours" in a "workweek." *Id.* This is the "general rule," and assumed to apply unless the employer can affirmatively prove, as a defense, that a statutory exception to this rule applies. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). Such exemptions are to be construed "fairly" - rather than adopting any artificially "narrow" construction - but, whatever the construction, the plain statutory terms of the exemption must be satisfied by affirmative evidence from the Defendants. *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018).

Defendants raise a single alleged exemption here: they contend that Plaintiffs *sub judice* are exempt from overtime under Section 7(i) of the FLSA as bona fide "commission employees." 29 U.S.C. § 207(a)(i). The statute states that the exemption applies:

> if (1) the regular rate of pay of such employee is in excess of one and
> one-half times the minimum hourly rate applicable to him under
> section 206 of this title, and (2) more than half his compensation
> for a representative period (not less than one month) represents
> commissions on goods or services. In determining the proportion of
> compensation representing commissions, all earnings resulting
> from the application of a bona fide commission rate shall be
> deemed commissions on goods or services without regard to
> whether the computed commissions exceed the draw or guarantee.

29 U.S.C. §207(i).

As to factor (1), Defendants bear the burden of proving that Plaintiffs were paid "in excess of" $10.87 per hour. To do so - again - they bear the burden of proving the hours worked by the Plaintiffs, so that the rate of pay can be determined.

Defendants' summary judgment submissions fail to address this issue. The Defendants' affidavits do not discuss or calculate the rate of hourly pay for any employee in any week. Defendants ask that the issue be presented to the jury, since the jury will have to decide the hours worked to reach a final figure for damages anyway. But, this approach is inconsistent with Rule 56. Unless Defendants submit some evidence - at the summary judgment stage - affirmatively establishing that they paid the Plaintiffs at least $10.88 per hour in each and every week at issue, then they have "fail[ed] to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. This alone justifies granting summary judgment on this issue.

Secondly and alternatively, under the FLSA, any commission must be "bona fide." The Court finds that no such bona fide commission was paid here. As an initial matter, Defendants never intended to apply the commission

exemption to the Plaintiffs. Defendant Mathews admitted he was not "paying any employees under 7(i);" instead, he was "paying them a salary." Id. at p. 60, ll. 6-22; see also id. at p. 21-23.  Furthermore, counsel for the Defendants acknowledged, at the hearing on this motion, that he suggested using the "commission" exception only *after* this lawsuit was filed.   For this reason, Defendants' payroll records indicated these were "salary" employees, and they did not make a notation on the payroll records that the company was treating these as exempt commission employees – as required by 29 CFR § 516.16 if these were in fact bona fide commission employees. *Id.* Similarly, they did not keep any records of any agreements regarding commissions with the employees. *Id.*

In an effort to overcome this, Defendants introduce only an affidavit from Defendant Mathews himself. But, the affidavit simply asserts - without any supporting documentary evidence - that Defendants intended to pay the greater of a $480 "guarantee" and a 25% commission in each week. "Such self-serving allegations are not the type of significant probative evidence required to defeat summary judgment." *United States v. Lawrence*, 276 F. 3d 193, 197 (5th Circuit 2001) (quoted in *United States v. Carter*, No. 16-20796 (5th Cir., June 8, 2018)). In addition, the documents themselves plainly contradict Defendants' allegations, showing that, on numerous occasions, Defendants paid employees amounts which bore no relation to either the alleged guarantee or the alleged "commission" - $500, $460, $400, amounts chosen without any proffered explanation in the record.  This is not a "bona fide" commission under the FLSA.

Moreover, Defendants fail to show that they meet the second requirement of Section 7(i), that commissions are half of total pay for a "representative period"

amounting to at least a month. To do so, it would have made sense for Defendants to provide payroll and commission calculation records for at least a month, and to show that the commission calculated was more than half of the total pay. They did not do so; instead, it appears that their spreadsheet simply called the actual amount paid "100% commission" regardless of whether the actual commission calculated would be above or below the alleged guarantee.

Finally, the Court considers and finds persuasive the reasoning in *Keyes v. Car-X Auto Servs.*, 2009 WL 4110144 (S.D. Ohio Sept. 30, 2009), as well as the cases of *Viciendo v. New Horizons*, 246 F. Supp. 2d 886, 898 (S.D. Ohio 2003) and *Donovan v. Highway Oil, Inc.*, 1986 WL 11266, at *4 (D. Kan. July 18, 1986). In those cases, the courts held that inflexible "salaries" were not the same as a "draw" or "guarantee" under the statute. A bona fide draw or guarantee must periodically be reconciled with the actual commissions earned. For example, if the guarantee is $500, and an employee only makes $400 in commissions one week, then in a future week where the employee makes $650 in commissions, he would receive only $550 in order to pay back the $100 shortfall from the prior week. This would be a bona fide guarantee. But where the employee's so-called "guarantee" is never reconciled in this way, then it is actually a fixed "salary," and must be subtracted from each week's earnings to determine the amount of the "commission" for the purposes of calculating the 50% proportion in section 7(i).

The present facts - even as alleged by Defendants' self-serving and unsupported affidavit - establish that the $480 weekly payment was, in fact, a "salary," and not a bona fide draw or guarantee, and as such it should be subtracted from pay to determine the proportion which represents commissions.

Although Defendants' memorandum argues otherwise, the affidavit itself appears to recognize this, because it calculates the proportion of commissions in this way. The result is that none of the Plaintiffs had commissions which equaled or exceeded 50% of pay.

For these reasons, the Defendants cannot establish any genuine dispute of material fact on the question of whether they can prove their affirmative defense of a Section 7(i) exemption, and summary judgment for the Plaintiffs is appropriate on this claim.

Taken together, the above six points establish that Defendants did in fact violate the FLSA's overtime provisions. Summary judgment as to liability is appropriate.

7. **Defendants cannot avoid liquidated damages because they cannot prove that they had a good faith reasonable basis for thinking they were complying with the law.**

Finally, Plaintiffs further move the Court to enter summary judgment on their contention that they are entitled to liquidated damages for Defendants' failure to pay Plaintiffs for overtime hours worked. The FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 . . . shall be liable . . . in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (emphasis added). "The duty of the court to award liquidated damages in an amount equal to the unpaid wages due under sections 206 and 207 of the FLSA are ministerial, not discretionary, under the terms of section 216." *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1414-15 (5th Cir. 1990).  The additional damages are meant to be compensatory, not punitive, in nature.  *Mohammadi v.*

*Nwabuisi*, 990 F.Supp.2d 723, 749 (W.D. Tex. 2014) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)). A strong presumption exists in favor of imposing full liquidated damages under the Act. *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999). Only one exception under the Act provides the court with discretion whether to award a lesser or no liquidated damages – Section 260:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 . . . .

Defendants bear a "'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA." *Singer v. City of Waco, TX*, 324 F. 3d 813, 822-23 (5th Cir. 2003) (citation omitted).

This is a dual burden: the Defendants must prove that their actions were "both in good faith and reasonable." *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1414-15 (5th Cir. 1990) (emphasis in original).

Concerning, good faith, although the requirement is subjective, it also "requires some duty to investigate potential liability under the FLSA." *Id.* (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979). Here, the facts show that Defendants have adopted a series of shifting rationales - all quite obviously meritless - in an effort to avoid the overtime requirements of the Act. First they misclassified the employees as independent contractors, then they improperly exempted them as "salaried," and finally they tried to reinterpret their policies in a vain effort to fit them under the "commission" exemption.

Defendants have not introduced sufficient evidence to support a defense predicated on good faith.

In addition, Defendants cannot show their reasons for their conduct was objectively reasonable. *Mireles*, supra. "Courts have held that a demonstration of objective reasonableness requires more than the absence of intent or misunderstanding; there must be 'objectively reasonable grounds for the employer to believe itself in compliance with the Act.'" *Tran v. Thai*, 2010 U.S. Dist. LEXIS 133130, at *19-20 (S.D. Tex. Dec. 16, 2010). Blind adherence to industry practice is an insufficient basis to bar the recovery of liquidated damages. *Reich*, 121 F.3d at 71.

In this case, Defendants attempted to bring their employees under the "salary" exemptions. There is absolutely no objectively reasonable basis for that claim. Even a cursory understanding of the job duties test would prevent the "mistake" the Defendants made here. Indeed, their own tax advisors' affidavit, on which they rely, reveals as much. Their tax preparer told them that "a supervising crew leader" could be an exempt salaried employee [59-2, Opp. to Mot. for Partial S. J., Exh 2] and from that Defendants claimed that they were justified in supposing that even "apprentice" or "helper" carpet installers were somehow exempt also.

Regarding the claimed "commission" exemption, Defendants cannot show how they could have possibly relied on the tax advisor's advice, because that exemption was not raised until after this suit was filed.

In sum, Defendants have failed to show any genuine dispute of material fact as to their liability for liquidated damages, and summary judgment shall be entered in favor of the Plaintiffs on that point.

## IV.   CONCLUSION

Rule 56 requires the respondent to come forward with responses.  Here, much has been asserted by the Plaintiffs, but little has been refuted by Defendants. The Defendants are required to come forward with cogent and competent evidence to negate the assertions of the movant or the court has to accept what has been shown by Plaintiff's proof. The matters asserted are not subject to dispute and thus not amenable to resolution by the finder of fact.

The Plaintiffs' Motion for Partial Summary Judgment is GRANTED in full. The Court hereby finds that Defendants Southern Floor Covering, Inc. and Jeff Mathews violated the overtime provisions of the Fair Labor Standards Act. The Court finds that these Defendants are liable jointly and severally for unpaid overtime for every hour worked in excess of 40 hours in any workweek by any Plaintiff.  Defendants are also liable for liquidated damages in an amount equaling the unpaid overtime.  In determining the total number of hours worked each week, compensable hours include: (a) the travel time between the Pearl facility and the job site; and (b) time spent on the jobsite waiting, if integral to the work and for the benefit of the employer (such as waiting for the premises to be readied by the customer).  Defendants have the burden of proof concerning the hours worked.

Moreover, the defense never submitted any request for more time to respond or, to address, or to strike any parts of Plaintiff's motion or supporting

documents; so, this court will not reopen the rule 56 analysis and will not entertain any additional submissions regarding this rule 56 motion.

This court will proceed to trial to allow the factfinder to determine the amount of overtime damages, the claim of retaliation asserted in the Complaint by Plaintiff Rockingham, and any remaining issues not addressed by this partial summary judgment.

SO ORDERED AND ADJUDGED, this 24TH day of September, 2018.

                          __s/ HENRY T. WINGATE_____
                          UNITED STATES DISTRICT JUDGE